## Whittaker et al. v. Commonwealth ex rel. Attorney General.

(Decided March 25, 1938.)

WESLEY & SON and R. C. TARTAR for appellants.

KENNEDY & KENNEDY and B. J. BETHURUM for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

These are companion cases to the case of Commonwealth of Kentucky ex rel. v. Brent Norfleet, 272 Ky. 800, 115 S. W. (2d) 355. They were heard together below, defendants having been joined as such in one petition. As to defendant Whittaker, it was charged that he was ineligible to occupy the office of member of the County Board of Education because at the time of this induction into office he had not completed the eighth grade in the common schools. For details reference is made to the case supra. As to Wilson, it was charged that at the time of his election he was a teacher in the common schools of Pulaski county, "in violation of the provisions of section 4399-22, Ky. Stats.," hence ineligible.

At the outset we are met with the contention that the court committed error in overruling the motion to require plaintiff to elect which of the three it would prosecute its suit against, presumably made on the ground that they were improperly joined in the one action. Upon a survey of the record and briefs on behalf of defendants, we find no substantial reason advanced, supported by convincing authority, why the

court committed prejudicial error. It is neither claimed nor shown that any of the defendants was prejudiced in any substantial way, or at all, by the procedure followed. The trial of the case, throughout, proceeded in an orderly way. Separate pleadings and dilatory motions were filed and each passed on by the court, with separate objections and exceptions. The court rendered separate judgments in each case. The practice of joining two or more members of a board, such as here involved, has been followed for a long time, as may be noted by reference to Waddle v. Hughes et al., 260 Ky. 269, 84 S. W. (2d) 75; Com. ex rel. Atty. Gen. v. Griffen, and three others, 268 Ky. 830, 105 S. W. (2d) 1063; and others which might be cited. Since there is no showing of prejudice to the rights of the parties, we conclude that in this respect the court committed no reversible error. See Board of Trustees of Fairview Graded School v. Renfroe, 259 Ky. 644, 83 S. W. (2d) 27; Burton v. Bradshaw, 266 Ky. 162, 98 S. W. (2d) 467.

Whittaker denied the allegations of the petition as to himself, and affirmatively pleaded that he had completed the eighth grade in a common school in Burnside, District No. —, in Pulaski county. He filed with his answer an affidavit which stated in substance that the affiant was at the time, and for many years had been a teacher in the schools of Pulaski county, and that Bert Whittaker was a student in her school. She stated:

"Bert Whittaker was a good student; was very proficient in his studies to the best of my knowledge and belief."

She says that she does not have the records of the school and cannot state from memory what grade he was in but that he passed and completed, to the best of her knowledge and belief, whatever grade he was taking each of the said two years she taught him in the said Burnside school.

Whittaker filed additional affidavits; one by a person who says she had known him all his life, and that she

"went to school with Bert Whittaker in the year 1912, at Burnside school, District No. —, in Pulaski county, and that he was in the eighth grade * * *

and passed it, and that affiant was also in the eighth grade and in the same class with Bert Whittaker.''

In addition to the above similar affidavits were filed by two other persons.

Wilson, charged as being ineligible on the ground above stated, demurred to the petition; his demurrer was overruled and he answered. He first denied the allegations of so much of the petition as had relation to him, and for affirmative defense pleaded:

"That at the time of his election * * * he was not directly or indirectly interested in the sale to the board of books, stationery, or any other property, materials, supplies, equipment or services for which school funds are expended."

He states that by appointment of the Board of Education of Pulaski County he was a teacher in District No. —. He asserted that before he qualified as a member of the Board of Education of Pulaski County, pursuant to his election, he resigned the office or position as aforesaid, and that said resignation was accepted by the County Board of Education of Pulaski County.

Plaintiff demurred to the answers, both of Whittaker and Wilson. Upon submission the court sustained the demurrers to the separate answers of each party; each refused to further plead, and upon submission the court adjudged Whittaker ineligible to hold office, because it was not shown at the time of induction into office he had qualified himself by completing the eighth grade in the common schools, and declared his office vacant. The court adjudged Wilson ineligible to hold the office, for the reason set forth in paragraph 2 of the petition. The court ousted both from office and declared the offices vacant.

Taking up appellant Whittaker's case first, we need only to refer to the companion case of Com. ex rel. v. Norfleet, this day decided and reported in 272 Ky. 800, 115 S. W. (2d) 355, in which we expressed our view of the meaning, intent, and purpose of the applicable portion of section 4399-22, Kentucky Statutes, definitely pointing out the method of proving the educational qualifications of one who seeks to become a member of the County Board of Education. We held therein it was mandatorily required that such qualification must be

manifested by (a) the record of the school in which the eighth grade was completed, or (b) the affidavit of the teacher or teachers who taught the pupil through the eighth grade. Further that qualification might be attained by compliance with (c).

The appellant Whittaker failed to meet the requirements of (a); his attempt to meet (b) did not measure up to that requirement, and he failed to take advantage of (c) by examination. The affidavit states that appellant Whittaker was a pupil in the Burnside school in 1911 and 1912; that he completed, to the best of affiant's knowledge and belief, "the grade she taught him; that he completed to the best of her knowledge and belief *whatever* grade he was taking each of the said two years she taught him in said Burnside school." The affidavit not only fails to meet the requirement by showing that appellant entered or completed the eighth grade, but it nowhere undertakes to say or assert that affiant taught the eighth grade in said school.

We need not repeat what was said in the Norfleet Case, except to say that the requirements of the statute are mandatory. There is no provision whereby evidence may be supplied to take the place of such as is required. In the absence of proof required by (a) or (b), the applicant is relegated to (c). With expression of this view, we are not called upon to discuss the affidavits filed by former schoolmates of appellant, which we have observed with respect.

The Wilson Case calls for a discussion of a portion of the qualification statute, section 4399-22, distinct from that hereinabove discussed. That part reads:

"No person shall be eligible to this office who at the time of his election is directly or indirectly interested in the sale to the board of books, stationery, or any other property, materials, supplies, equipment, or services for which school funds are expended. If, at any time after the election of any member of such board, he shall become interested in any such contract with or claims against the board, * * * his office shall without further action be vacant, and it shall be filled as hereinafter provided."

We have quoted the context to the particular part of the section applicable, since it has some bearing on

the construction to be given to the portion directly in issue. Under these provisions there can be no doubt that whatever disqualification was intended is a disqualification of the candidate for election to the office, if it exists at the time of election. Counsel for appellant Wilson does not contend otherwise, nor could such contention be made with any degree of success. It is observed that the latter portion of the section provides for disqualification "after election," and upon the same grounds as constitute the disqualification, if such existed at the time of election. The Legislature intended to provide against either contingency. Therefore, we cannot escape the conclusion that it was intended that if the conditions named existed at the time of the election, the person affected thereby was disqualified to hold the office of school board member.

It is argued, however, that the word "services" as used in the statute does not mean nor was it intended to include such services as might be rendered by a teacher, although pay for such services is, admittedly, from the public school funds. It is also argued that it should not apply to appellant Wilson, since his services were sold, not to the board but to the pupils or patrons of the school, and he had, long before the election, sold all the services he had to sell. The same argument could be well made in regard to one who had made contract to sell a lot to the school board; to build a schoolhouse, or furnish light, fuel, water, or any other supplies or equipment. To agree with this contention would ultimately lead to a defeat of the undoubted intent and purpose of the act.

Services by a teacher are rendered to the pupils and patrons, but they are so rendered because of a season's or term's contract directly with the board, and for which services the board pays "school funds." The fact that the contract is a closed incident before the time of election makes no difference. The same would or might be true of the other contracts mentioned above. But there is always ahead the settlement day. Differences may arise as to the construction, fulfillment of or compliance with the contract. Such differences would at once create a conflict of interests, and no contractor, whether he be one supplying equipment, labor, or services of any nature, should be placed in a position where he might adjudge upon his own case. From the many school cases involving school contracts

reviewed in this court, such contingency may not be thought of as a remote possibility.

Taking the instant case as an example, it is apparent that appellant continued to render services up until his resignation and his induction into office. There might have remained unpaid some portion of his salary, for one, two, three, or more months. Such conditions have existed. In such case the newly elected and sitting board member would become one of the jury passing on his claim. No doubt this kind of situation was in mind, not only in respect to teachers, but all other persons who deal with the board. It may be that it is a little difficult to see wherein the teacher, at the same time a candidate for board member, could use his office to gain any undue advantage in the election. The contingency, above mentioned, is less difficult to grasp. But consideration of possibilities or probabilities, or of purpose, intent, or motive is for the lawmakers rather than the judiciary. The reasons for the passage of a law is for the General Assembly. We may inquire whether or not the particular act transcends any fundamental law. The Legislature, no doubt, considered the prohibition to be salutary. We cannot say that it is not so, nor that in the long run its observance may result in bringing the educational system, as applied in the common schools, to a higher level or standard, as the legislative endeavor seems to have been directed in later years.

Expressing the views above set out, we are of the opinion that the court correctly held that neither appellant is entitled to hold membership on the County Board of Education.

The judgment in each case is affirmed.